⓪

# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

| | |
|---|---|
| El-Sayyid Nosair | )<br>)<br>)<br>) |
| _____ | ) Case Number: 13 - 1017 - MJR |
| _____ | ) (Clerk's Office will provide) |
| *Plaintiff/Petitioner(s)* | ) |
| v. | ) ☐ CIVIL RIGHTS COMPLAINT |
| Federal Bureau of Prisons | ) pursuant to 42 U.S.C. §1983 (State Prisoner) |
| Leslie Smith, Chief Intelligence Analyst | ) ☑ CIVIL RIGHTS COMPLAINT |
| D. Scott Dodrill ADCPD | ) pursuant to 28 U.S.C. §1331 (Federal Prisoner) |
| michael B. Cooksey, ADCPD | ) ☑ CIVIL COMPLAINT |
| *Defendant/Respondent(s)* | ) pursuant to the Federal Tort Claims Act, |
| | ) 28 U.S.C. §§1346, 2671-2680, or other law |

**FILED**

I.  **JURISDICTION**

**OCT 01 2013**

Plaintiff:  El-Sayyid Nosair # 35074-054

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

A.  Plaintiff's mailing address, register number, and present place of
confinement.  United States Penitentiary-Marion, Illinois
Communications Management Unit ("cmu")
Register # 35074-054
4500 Prison Road, P.O. Box 1000
Marion, IL 62959-1000

**Defendant #1:**

B.  Defendant  *Federal Bureau of Prisons*  is employed as
(a)  (Name of First Defendant)

_____
(b)  (Position/Title)

with  *Federal Bureau of Prisons, 320 First Street*
(c)  (Employer's Name and Address)

*N.W., Washington, D.C. 20534*

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?  ☑ Yes   ☐ No

If your answer is YES, briefly explain:

②

**Defendant #2:**

C.    Defendant _Leslie Smith_ is employed as

(Name of Second Defendant)

_Chief Intelligence Analyst_

(Position/Title)

with _Federal Bureau of Prisons-Counterterrorism Unit_

(Employer's Name and Address)

_320 First Street, N.W., Washington, D.C. 20534_

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?   ☒ Yes   ☐ No

If you answer is YES, briefly explain: _employed by the Bureau of Prisons—_

**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

_( see Attached )_



## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court relating to your imprisonment?   ☑ Yes   ☐ No

B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. <u>Failure to comply with this provision may result in summary denial of your complaint</u>.

1.   Parties to previous lawsuits:
Plaintiff(s): *El-Sayyid Nosair, et al.*

Defendant(s): *Federal Bureau of Prisons, et al.*

2.   Court (if federal court, name of the district; if state court, name of the county): *U.S. District Court for the District of Colorado*

3.   Docket number: *05-CV-02467-PAB-KLM*

4.   Name of Judge to whom case was assigned: *Phillip A. Brimmer*

5.   Type of case (for example: Was it a habeas corpus or civil rights action?): *Civil Rights Action*

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): *Dismissed On Appeal*

7.   Approximate date of filing lawsuit: *2008*

8.   Approximate date of disposition: *April 20, 2012*

(4)

III.   **GRIEVANCE PROCEDURE**

A.   Is there a prisoner grievance procedure in the institution?  ☑ Yes     ☐ No

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure?  ☑ Yes     ☐ No

C.   If your answer is YES,
1.   What steps did you take? *appealed; filed BP-8 filed BP-9, BP-10 BP-11.*

2.   What was the result? *Denied at all levels.* ⊂

D.   If your answer is NO, explain why not.  ————————

E.   If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?  ☐ Yes     ☐ No

F.   If your answer is YES,
1.   What steps did you take?

2.   What was the result?

G.   If your answer is NO, explain why not.

H.   Attach copies of your request for an administrative remedy and any response you received.  If you cannot do so, explain why not:


N/A



IV.   STATEMENT OF CLAIM

A.   State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated.  Do not include legal arguments of citations.  If you wish to present legal arguments or citations, file a separate memorandum of law.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

(see Attached)



V.   **REQUEST FOR RELIEF**

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

( See Attached )

VI.   **JURY DEMAND** (*check one box below*)

The plaintiff ☑ does   ☐ does not request a trial by jury.

**DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: __9/15/2013__
(date)

U.S.P-Marion, Illinois
__P.O. Box 1000, 4500 Prison Road__
Street Address

__Marion, Illinois 62959-1000__
City, State, Zip

__NOSAIR__
Signature of Plaintiff

__EL-SAYYID NOSAIR__
Printed Name

__35074-054__
Prisoner Register Number

_____
Signature of Attorney (if any)



I.Jurisdiction

1. This is a civil action, authorized by Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388(1971), to redress the deprivation of rights, secured by the Constitution,laws, and the treaties of the United States. This court's jurisdiction is also pursuant to 28 USC 1331 and 28 USC 1343(a)(1)-(a)(4). Plaintiff seeks declaratory* relief pursuant to 28 USC 2201 and 2202.The plaintiff seeks injunctive relief pursuant to 28 USC 2283 and 2284 and Rule 65 of the Federal Rules of Civil procedure.Plaintiff's Privacy Act claims are pursuant to 5 USC 552a(g)(1)(A) and 552a (g)(2)(A), and 552a(g)(1)(D). Plaintiff's claims for injunctive relief are authorized by 5 USC 702. Plaintiff's conspiracy claims are authgorized by 42 USC 1985(3) and 1986. Plaintiff seeks damages for Intentional Infliction of Emotional Distress under Illinois state law. This court's power to hear the state law claims are authorized by 28 USC 1367. Plaintiff's federal wiretapping claims are brought pursuant to 18 USC 2520.

II.Venue

2. The United States District Court for the Southern District of Illinois is an appropriate venue, be cause it is where the events giving rise to this cause of action occurred.

II. Parties

3. Defendant, Federal Bureau of Prisons, is located at 320 First Street, N.W., Washington, D.C. 20530.

4. Defendant,Leslie Smith, is at all times mentioned,CURRENTLY the Chief Intelligence Analyst for the Bureau of Prison's Counterterrorism Unit("CTU"), which is located in MArtinsburg,West Virginia.


Address:320 First Street, N.W.,Washington, D.C. 20530

---

5. Defendant, D.Scott Dodrill, is at all times mentioned herein, the Assistant Director of the Correctional Programs Division. He is no longer the Assistant Director of the Correctional Programs Division.Address:320 First Street,N.W., Washington,D.C. 20530.,

---

6. Defendant, Michael B. Cooksey, was at all times mentioned herein, the Attorney General of the United States. He is no longer the Attorney General. Address:(known ONLY by the Department of Justice).

---

7. Defendant, Eric Holder, is currently the Attorney General of the United States. Address:950 Pennsylvania Avenue,N.W.,Washington, D.C. 20530.

---

8. Defendant, Harley Lappin, WAS at all times mentioned herein, the Director of the BOP. He is retired. Address:320 First Street, N.W., Washington, D.C. 20530.

---

9. Defendant, Thomas R.Kane, was at all tiems mentioned herein, the Acting Director of the BOp when Lappin retired from the BOP. He is an employee in the General Counsel's office.Address:320 First Street, N.W., Washington,D.C. 20530.

---

10. Defendant, Charles Samuels,Jr., is CURRENTLY the DIRECTOR of the BOP.  Address:320 First Street,N.W., Washington,D.C. 20530.

---

11. Defendant,Joyce C.Conley,WAS at all times mentioned herein, the Assistant Director of the Correctional Programs Division. She is no longer the ADCPD. Address:320 First Street,N.W.,Washington,D.C. 20530.



12. Defendant, Brian K.Davis, is CURRENTLY the Assistant Director of the Correctional Programs Division. Address:320 First Street, N.W., Washington,D.C. 20530.

---

13. Defendant, Michael K.Nalley, WAS at all times mentioned herein, the Regional Director of the North Central Regional Office. Address: 400 State Street, Tower II,5th Floor,Kansas City,Kansas 66101. he is retired from the BOP.

---

14. Defendant, Amber Nelson, is at all timessmentioned herein, the Acting Director of the North Central Regional Office when Nalley retired, and the Executive Assistant to Nalley and Laird. Address:400 State Street, Tower II,8th Floor,Kansas City,Kansas 66101.

---

15. Defendant, Paul M.Laird, is currently, the Regional Director of the North Central Regional Office. Address:400 State Street, Tower II, 8th Floor,Kansas City, Kansas 66101.

---

16. Defendant, Bill Taylor, was at all times mentioned herein, the Chief of the Intelligence Section of the Bureau of Prisons. He is RETIRED and no longer in that position. Address:(known ONLY by the BOP).

---

17. Defendant, John Vanyur, was at all times mentioned herein, the Senior Deputy Assistant Director of the Correctional Programs Division. He si no longer in that position and is retired. Address:(known ONLY by the BOP).

---

18. Defendant, D.Schiavone, is at all times mentioned herein,



the Senior Intelligence Analyst with the Bureau of Prison's Counterterrorism Unit("CTU") in Martinsburg,West Virginia. Address:(known ONLY by the BOP).

19. Defendant, April Cruitt, is at all times mentioned herein, an Intelligence Analyst with the Bureau of prison's CTU in Martinsburg,West Virginia. Address:(knon ONLY by the BOP).

20. Defendant, William Falls, is at all times mentioned herein, an Intelligence Analyst with the BOP's CTU in Martinsburg,West Virginia.Address:(known ONLY by the BOP).

21. Defendant, J.Simmons, is at all times mentioned herein, an Intelligence Analyst with the BOP's CTU in Martinsburg,West Virginia. Address:(known ONLY by the BOP).

22. Defendant, T.Capaldo, is at all times mentioned herein, an Intelligence Analyst with the BOP's CTU in Martinsburg,West Virginia. Address:(known ONLY by the BOP).

23. Defendant, Stephen Colt, is at all times mentioned herein, an Intelligence Analayst with teh BOP's CTU in Martinsburg,West Virginia. Address:(known ONLY by the BOP).

24. Defendant, Michael Mukasey, was at all times mentioned herein, the Attorney General of the United States. he is retired and is no longer the Attorney General. Address:(known ONLY by the BOP).

25. Defendant, Ron Wiley, was at all times mentioned herein,

a Warden at the ADX-Florence, Colorado, the federal SUPERMAX.
He is retired and no longer the Warden of ADX.Address:(known
ONLY by the BOP).

26. Defendant, Robert A.Hood, was at all times mentioned herein,
the Warden at ADX-Florence,Colorado. He is retired and is no
longer the Warden. Address:(known ONLY by the BOP).

27. Defendant, E.L. Hughston, was at all times mentioned herein,
the Captain at ADX-Florence,Colorado. He is retired and is no
longer the Captain. Address:(known ONLY by the BOP).

28. Defendant, James E.Burrell, was at all times mentioned herein,
the Associate Warden of Programs at ADX-Florence,Colorado.He is
no longer the AW of Programs. Address:(known ONLY by the BCP).

29. Defendant, David Duncan, was at all times mentioned herein,
the Associate Warden of Operations at ADX-Florence,Colorado.
He is no longer the AW of Operations, and is retired from the
BOP.Address:(known ONLY by the BOP).

30. Defendant,M.Collins, was at all times mentioned herein, a
Unit Manager at ADX-Florence,Colorado. He is no longer the
Unit Manager and is retired. Address:(known ONLY by the BOP).

31. Defendant, Unit Manager Gomez, was at all times mentioned
herein, a Unit Manager at ADX-Florence,Colorado. Address:(known
ONLY by the BOP).



32. Defendant, Correctional Counselor Knox, was at all times mentioned herein, a Correctional Counselor at ADX-Florence,Colorado. Address:(known ONLY by the BOP).

33. Defendant, Wendy Roal,was at all times mentioned hererin, the Warden of USP-Marion,Illinois. She is no longer the Warden and is retired. Address:(known ONLY by the BOP).

34. Defendant, J.S. Walton, is CURRENTLY the Warden of USP-Marion Illinois. Address:4500 Prison Road, PO BOX 2000, Marion,Illinois 62959-2000.

35. Defendant, Darren (LOAN) Sproul, was at all times mentioned herein, a Unit Manager at ADX-Florence,Colorado. He is no longer the Unit Manager and is the Associate Warden of programs at USP-Marion, Illinois. Address: 4500 Prison Road, PO BOX 2000,Marion,Illinois 62959-2000.

36. Defendant, Case manager Shepherd, was at all times mentioned herein, the Case Manager at the Terre Haute,Indiana CMU. Address: 4700 Bureau Road South,Terre Haute,Indiana 47802.

37. Defendant, M.Neumann, is CURRENTLY, the Case Manager at the Communications Management Unit("CMU") in Marion,Illinois. address:4500 Prison Road,PO BOX 2000,Marion,Illinois 62959-2000.

38. Defendant, Steven Cardona, is CURRENTLY the Unit Manager at the CMU in Marion,Illinois.Address:4500 Prison Road,PO BOX 2000, Marion,Illinois 62959-2000.



39. Defendant, C.Johnson, is at all times mentioned herein, the CURRENT AW of Operations at USP-Marion,Illinois.Address: 4500 Prison Road, PO BOX 2000,Marion,illinois 62959-2000.

40. Defendant, Henry Rivas, is at all times mentioned herein, an Intelligence Research Specialist at the CMU in Marion,Illinois. Address:4500 Prison Road,PO BOX 2000,Marion,Illinois 62959-2000.

41. Defendant, IRS Coleman, is the Intelligence Research Specialist for the CMU inTerre Haute,Indiana. Address:4500 Prison Road,PO BOX 2000,Marion,Illinois 62959-2000.

42. Defendant, Charles Lockett, is at all times mentioned herein, the Complex Warden at FCC-Terre Haute,Indiana. Address:(known ONLY by the BOP).

43. Defendant, Warden Oliver,was at all times mentioned herein, the Warden at FCC-Terre Haute,Indiana. Address:4700 Bureau Road South, Terre Haute,Indiana 47802.

44. Defendant, Steve Julian, was at all times mentioned herein, the AW of Operations at USP-Marion,Illinois.Address:(known ONLY by the BOP). He is no longer the AW of Operations.

45. Defendant,John Parent, was at all times mentioned herein,the AW of Programs at USP-Marion,Illinois. Address:(known ONLY by the BOP).

46. Defendant,Lawrence Howard, was at all times mentoned herein, the Captain at USP-Marion,Illinois. Address:(known ONLY by the BOP). He is no longer the Captain.



(64)

# Additional Defendants

(1) G. Burgess

Title: Case Manager (for the CMU)

Address: United States Penitentiary-Marion, Illinois, 4500 Prison Road, P.O. Box 2000, Marion, IL 62959-2000

Reason he is liable: approved of the transfer to the CMU, and denied transfers from the CMU, based on race, religion, and political beliefs; refuses to amend erroneous information in my file, including my CMU file, and condoned, implemented and approved of the "terrorist inmate policy."

(2) M. Steinmetz

Title: SIS Lieutenant

Address: United States Penitentiary-Marion, Illinois, 4500 Prison Road, P.o. Box 2000, Marion, IL 62959-2010

Reason he is liable: approved of the transfer to the CMU, and denied transfers from the CMU, based on race, religion, political belief, and approved of and condoned, and implemented the "terrorist inmate policy."



47. Each defendant is being sued in his/her individual capacity for monetary damages, and in his/her official capacity for injunctive relief.

---

48. On or around 10/01/1995, plaintiff El-Sayyid nosair was convicted by a jury of one count of Seditious Conspiracy and RICO violations in the US District Court for the Southern District of New York. See Exhibit 1. The plaintiff was NOT convicted of a "terrorism offense" as it is defined in the Sentencing Guidelines, or the Patriot Act, nor did the federal prosecutors assigned to his case allege that he was connected to any type of terrorist organization.Id. While awaiting sentencing, plaintiff was assigned to the Metropolitan Correctional Center in New York. Plaintiff was convicted in 1995 of federal charges, while at MCC New York.While at MCC-New York in 1995, plaintiff was written a false and fabricated incident report alleging that he was involved in a group demonstration with several other inmates. The incident report was later expunged by the Discipline Hearing Officer ("DHO"). In 1994, Plantiff was written another fabricated incident report that alleged that he was involved in a brawl with several of his co-defendants while in the visiting room. This incident report was later expunged due to lack of any evidence plaintiff was involved in the dispute.

---

49.Plaintiff was transferred to USP-Terre Haute-Indiana in January of 1996. While at USP-Terre Haute-Indiana, plaintiff maintained clear conduct the entire time. When plaintff arrived at Terre haute, he was placed in the Special Housing Unit, and was NOT released due to an alleged separation issue with one of his co-conspirators. Plaintiff was transferred to USP-Lewisburg, Pennsylvania, over 2 1/2 months after arriving at Terre Haute.

---

50. Plaintiff arrived at USP-Lewsiburg,Pennsylvania on or around 4/15/1996, and maintained clear conduct the entire duration of his stay. Plaintiff was



involved in recreational activities while in General Population, participated
in A.C.E. classes, and had a positive rapport with BOTH staff and inmates.
Plaintiff could run outdoors on a track, enroll in vocational training
and earn a trade license, such as masonry,carpentry,culinary arts,etc.
Plaintiff could also take college courses, work in the UNICOR fafcility,
and had up to 300 minutes of telephone time per month. plaintiff could
also have contact visits with his family every month. The plaintiff's
mail and telephone were constantly monitored by the Special Investigative
Supervisor("SIS") department, and and at not ime during his incarceration
did the plaintiff ever abuse his communications. Plaintiff was,and still
is, a Sunni Muslim, and has/ had a positive impact and role with the
Muslims at Lewisburg, advocating peace amongst each other, and other
staff. Inamte Randall Anderson, s former member of the White Supremacy
group, the Aryan Brotherhood("AB"), decided that he wanted to become
a Sunni Muslim.

---

51. Plaintiff befriended Anderson, and Anderson eventually decided that he
wanted to become a Muslim. In November of 1996, Anderson was murdered by
Aryan Brotherhood members, who were subsequently placed in the ADX-Control
Unit because of his murder. After the killing of Anderson,another white
Supremist was murdered, purportedly, according to BOP staff, by Muslim
inmates, in retaliation for the killing of Anderson. The plaintiff was
placed in the Special Housing Unit("SHU"), because staff at Lewisburg
falsely identified him as a leader of the Sunni Muslims. As a result,
the plaintiff was placed in the SHU. Plaintiff maintained clear conduct
while at Lewisburg.Plaintiff was eventually transferred BACK to USP-
Terre Haute,Indiana.

---

52. Plaintiff was sent back to USP-Terre Haute,Indiana in October of 1997,
and maintained clear conduct at USP-Terre Haute as well. Plaintiff was able



to receive contact visits, had access to 300 minutes per month for telephone usage, could run track, and participate in recreational activities, and take college courses. While at Terre Haute, plaintiff began speaking to many inmates about Islam. Subsequently, many inmates converted to Islam. When staff at Terre Haute,Indiana found out about this, they began to target the plaintiff. Plaintiff was then identified as the leader of the Sunni Muslim inmates. Staff began to prepare and file false reports on the plaintiff, alleging that he was the leader of the Sunni Muslims and was causing disturbances at USP-Terre Haute. In January of 1998, a disturbance occurred in the dining room of the food service area, between Muslim and non-Muslim inmates. Plaintiff was placed in the SHU, and reports were filed, falsely, indicating and accusing the plaintiff of using "threats of violence to convert others to Islam", despite the fact that Islam forbids compulsion inb religion. All Sunni Muslim inmates, who truly follow the Sunna of the Prophet Muhammad, know this. The plaintiff was transferred to USP-Lompoc, California on or around August of 1998.

53. While at USP-Lompoc, the plaintiff also maintained clear conduct. Plaintiff was participating in recreational activities, using the telephone, was able to get contact visits, take A.C.E. Classes, and participate in psychology programs. Plaintiff' s mail and telephone were being monitored constantly, and he never abused any of his communications priviliges while at Lompoc USP. In August of 2001, palintiff was sent to USP-Pollock, which had been recently opened, to increase the population.

54. Plaintiff reamined in the General Population for several days while at USP-Pollock,Lousiana, and maintained clear conduct while he was there. On 9/11/2001, the Twin Towers were destroyed by airplanes, allegedly driven by terrorists from the Middle East. Plaintiff was, and still is NOT, in any way affiliated with ANY terrorist group. Soon after the Twin Towers were hit, defendants Ashcroft, Taylor,/defendant Vanyur,Conley,Lappin, all created a



"terrorist inmate policy", which amounted to a "substantive rule"
requiring notice-and-comment rulemaking under 5 USC 553 and 552(a).
Plaintiff was immediately placed in the Special Housing Unit upon
order by defendants Vanyur,Cooksey,Taylor,Lappin,and Ashcroft.
Plaintiff was then placed in a single-cell on "single cell status",
had to go to recreation by himself, with three officers escorting him to
and from recreation, had to shower at different times than everyone else,
could NOT communicate with other inmates, and was eventually placed on
Special ADministrative Measures, known as "SAMS". Plaintiff was NOT
given an opportunity to contest this decision prior to placement. The
plaintiff's mail and telephone usage were extremely limited during the
time that he was in the SHU.

---

55. On October 1,2001, the then Assistant Director of the Correctional Programs
Division, Michael B.Cooksey, met with defendants Vanyur,Taylor,and Ashcroft,
to discuss the events of 9/11. These defendants, upon information and belief,
engaged in conversations, exchanged emails, faxes, and correspondence,
discussing the placement of Muslims of Arab descent in the SHU, regardless
of whether or NOT the inmate had a "terrorism" offense. On the above mentioned
date, a memorandum was sent to all Wardens of EVERY BOP facility, discussing
the placement of inmates in the SHU, who had so-called "Security Threat Group"
assignments of "terrorist", or who were possibly linked to the terrorist
attacks on 9/11/ See attached Exhibit 2. This memo indicated that these
inmates "should remain under the tighest possible conditions, until the
multiple agencies figure out who was behind the attacks, and if any inmate
had any involvement". Id.

---

56.On March 28,2002, defndant Cooksey issued another memorandum in which he
indicated that the plaintiff, and several of his co-defendants, should be
placed in the SUPERMAX in ADX-Florence,Colorado. This memorandum contained



false information, namely, that the plaintiff was connected to a terrorist organization. See Exhibit 3. In September of 2002, without ANY type of notice or hearing, plaintiff was sent to ADX. The reasons he was sent were not provided to him. Plaintiff received no incident reports while at USP-Pollock, Louisiana.

---

57. When the plaintiff arrived at the SUPERMAX, defendants Cooksey,Vanyur, Lappin,and Ashcroft, provided false information to the staff at ADX, namely Duncan,Hughston,Burrell,Hood,Knox,Collins,and Gomez, so that the plaintiff could meet the "criteria" to be placed in ADX. The information,documents,and correspondence that these defendants provided to the ADX staff are false, fabricated, and misleading.

---

58. The document contained a plethora of information that is false, namely that the plaintiff was involved in a terrorist organization known as "Al-Gamma Al-Islamia", an Egyptian "terrorist" organization designated as such by the US Department of State; that the plaintiff assassinated Rabbi Kahane in 1990 despite the known fact that he was acquitted in state court of these charges, and that the plaintiff was the leader of the SUnni Muslim inmates at every prison population that he was housed. See attached Exhibit 4, H Unit Classification SUmmary. This "SUMMARY" goes in lenghth to state that the plaintiff is a member of Al-Gamma Islamia and:

(a) He is a "Al-Gamma Suspect"

(b) That he is classified as "Management Interest Group 20"(World Trade Center Bombing of 1993)

(c) that the plaintfif plotted with "fellow terrorists to bomb New York City Landmarks", Paragraph B, Exhibit 4.

(d) the plaintiff suggested that an attack on a New York State Assemblyman and that the judge over the plaintiff's case should be kidnapped(state case)

(e) That two co-conspirators spoke to Nosair about a plan to bomb the



United Nations building, and that Nosair objected, and instead, encouraged
the co-conspirators to instead kidnap Richard Nixon and Henry Kissinger.
The report states that "Nosair indicated that Nixon and Kissinger were
to be exchanged for himself and the individuals who had bombed the World
Trade Center and were in custody." Id., Exhibit 4, Paragraph B.

59. The document goes on to state, falsely, that the plaintiff received
terrorist training, that while at USP-Lewsiburg, Nosair was the leader of
the Sunni Muslim inmates, amongst other allegations, that while at USP-
Terre Haute, Indiana in 1998, Nosair was using "threats of violence in his
efforts to recruit inmates to Islam", Exhibit 4, Paragraphs H and I, and that
while plaintiff was in the "terrorist organization" in 1990, he was taking
orders from his co-defendant, Omar Rahman , and he was sacrificed by the
terrorist organization before significant acts could be planned and
executed, and therefore plaintiff was a "low-level participant within the
Al-Gamma Terrorist Organization." Id, Paragraph M; the report states in the
"SUMMARY AND CONCLUSIONS" section, paragraph M, that "his assassination of
the Jewish Defense League appears to have enhanced his stature." Id. The
report states that Nosair was, inter alia, and has had, substantial influence
over the Muslim populations at the various United States Penitentiaries where
he has been incarcerated."

60. all of the information contained in this report is completely false, and
has been used, in conjunction with the BOP's terrorist inmate policy, to
house plaintiff in the tighest possible restrictive conditions, despite the
fact that he has had no incident report since 1995, almost 20 years ago.
Defendants Hood, Riley, Lappin, Kane, Smith, Conley, Cooksey, Davis, Nalley, and
Nelson, all approved, condoned, and implemented the terrorist **inmate** policy
aginst plaintiff and other Muslim inmates, and approved the usage of the
false information in plaintiff's Counterterrorism Unit("CTU") file to keep



the plaintiff housed in the tighest possible conditions. This policy, upon information and belief, was also (also) implemented because of the plaintiff's race,religion, and political beliefs. The information used to classify the plaintiff is stored an a headquarters-level entity in Martinsburg,West Virginia, known as the Counterterrorism Unit("CTU"). This unit has its own system of records, separate from the BOP's Central File and other records sytems, and everything pertaining to the plaintiff is stored in this location.

---

61. Upon information and belief, defendants Nalley,Nelson,Hood,Riley,Collins, Gomez,Sproul,Hughston,Burrell,Duncan, Knox, all denied the plaintiff's request to be transferred to a less-restrictive facility, based on their dislike, and/ or hatred of plaintiff's religion,race, and his political beliefs.

---

62. In 2009, after spending 7 years at ADX without even one incident report, no violations of BOP regulations or communications privileges, the BOP sent the plaintiff to the ADX "Step-Down" program, and then transferred him to a unit, run by the CTU, known as the Communications Management Unit. The Communications Management Units were created in 2006, without the chance for the public to comment on them, as is required by federal law, under the notice and comment section of the Administrative Procedures Act. The CMUs are located in Terre Haute,Indiana, and in Marion,Illinois.See Yassin Muhiddin Aref, et al, plaintiffs v. Eric Holder, et al, defendants. Case Number 10-0539(RMU), 2011 U.S. Dist LEXIS 33598(2011)(District of Columbia). The CMUs severely restrict the amount of mail that can be sent out, telephone calls are restricted to 2 per week which must be approved 1 week in advance; emails, mail, both incoming and outgoing, mustbe approved by the CTU in advance before it is delivered, or mailed out.

(21)

63. This is a direct result of the BOP's "terrorist inmate" classification program. The terrorist inmate classification programs allows the BOP to classify inmates as terrorists, REGARDLESS of the crime for which they are convicted; imposing severe restrictions on these inmates communications, and segregating the inmate(s) from inmates in General Population by confining them in conditions equal to administrative segregation and/or in the newly created Communications Management Units. Plaintiff was not identified as a "terrorist" until after the events of 9/11.

---

64. As plaintiff previously stated, the CTU is a "headquarters-level entity" located in Martinsburg, West Virginia. The CTU is run by the Senior Intelligence Analyst, defendant Schiavone, and 18 other staff members, to include 2 "Management Analysts", 1 "Administrative Assistant", 14"Intelligence Analysts", and the Chief of the Counterterrorism Unit, defendant Leslie Smith. See Exhibit 54.Among the Intelligence Analysts are defendants Cruitt,Capaldo,Simmons,Falls, and Colt. The CTU defendants are responsible for assisting the BOP in identifying, developing, and implementing policies, programs, and protocols that apply in national security matters, such as classifying inmates as "Domestic Terrorist"(DT) or "International Terrorist"(IT);(2) identifying and validating inmate involvement in terrorist activities;(3) coordinating foreign language translation services and manageing the contract that provides these services for all BOP facilities; (4) monitoring and analyzing terrorist inmate communications, and producing intelligence products;(5) developing and providing relevant counterterrorism training; (6) collaborating with other correctional agencies, law enforcement, and the intelligence community.

---

65. In addition to this, the CTU is directly responsible for processing requests from the FBI for inmate information, and for providing the content of non-monitored "legal calls" and regular calls to the FBI, without a court order or other legal process, using a document known as the"Fisher Memo." The



"Fisher Memo" allows the CTU defendants to provide the content of all inmate phone calls, including legal calls, which are supposed to be unmonitored, to the FBI, without any type of court order whatsoever, in violation of the Privacy Act. The CTU maintains an electronic system of records that has copies of all of the plaintiff's incoming and outgoing general correspondence, some of his legal mail, transcripts of telephone calls, commissary purchases, deposits to his account, and withdrawals, emails, and other information, stored on their databse. in addition, all transfers to, and from, the CMU, must be approved by the Assistant Director of the Correctional Programs Division, and members of the CTU.

---

66. Upon arrival to the CMU in Terre Haute,Indiana, plaintiff received a "Notice of Transfer to a Communications Management Unit", stating, vaguely, the purported reasons why the plaintiff was being placed in the CMU. The Notice simply stated that because of the plaintiff's offenses of conviction, and that  plaintiff's "offense conduct included membership in and significant communication with Al-Gamma Al-Islamia"(which the plaintiff disputes)",the plaintiff is being placed in the CMU. The notice did NOT state how long the plaintiff could expect to remain in the CMU, what he could do to get out of the CMU,but merely stated that his offenses of conviction required that the plaintiff's"communications with the public require heightened monitoring, controls, and review." See Exhibit 5.This is despite the fact that plaintiff had NOT been found guilty of an incident report in almost 20 years, never abused any of his communications  at prior institutions, and at the most secure prison in the entire country, the federal SUPERMAX, and had no conduct in his file that would have warranted his placement in such harsh conditions of confinement.

---

67. Defendants Lappin, Kane, Dodrill,Smith,Nalley,Nelson,Schiavone,Cruitt, Falls,Simmons, Capaldo, and Coit all in their supervisory and administrative



capacities, approved of the plaintiff's transfer to the CMU, despite the
knowing fact that the information contained in his CTU file, used to place
him in the CMU, was false. Upon information and belief, their placement
of the plaintiff in the CMU was based upon his race, religion, and political
beliefs. Defendants Denham, Lockett, and Oliver, in their supervisory
capacities concurred in the placement decision. Defendants Shepherd and
Coleman also concurred in the placement decision, and denied the
subsequent requests to be transferred from the CMU.

68. Defendants Samuels Jr., Brian K.Davis,both supervisory level defendants
directly responsible for denying and/or approving transfers from the CMU,
also denied plaintiff's subsequent requests to be transferred from the CMU
based on his race,religion, and political beliefs, and the false information
contained in his CTU file. Defendants Holder, upon information and belief,
did meet with defendants Dodrill,Samuels Jr., and Davis, and conspired with
them to deny BOTH Arab, and non-Arab Muslims, with and without "terrorism"
cases, transfers from the CMUs, based on my/our political beliefs,
religion, and race. Plaintiff was transferred to the Marion,Illinois CMU
on or around January 30,2012.

69. Upon arrival to the Marion,illinois CMU plaintiff's subsequent requests
to be transferred to the General Population were denied by defendants Rivas,
Roal, Neumann, and later defendants Walton and Cardona. Defendants Dodrill,
Davis, Laird, and Nelson also participated in the denial process. The
conditions in the MArion,Illinois CMU mirror those at the Terre Haute,
indiana CMU, and some of those at ADX-Florence,Colorado. Inmates in ADX
are allotted 3 times more visiting and phone calls than inmates in the
CMUs. Plaintiff again requested to be transferred at subsequent "reviews"
but defendants Walton, Rivas,Nemann, Roal,Parent,Johnson,Howard,Sproul,
and Julian all denied his request, and told him that "your estay in the CMU



is indefinite." Upon information and belief, defendants' refusal to
transfer the plaintiff from the CMU was based on his race,religion, political
beliefs, and false information in his CTU file. If the defendants' reasons
for denying the plaintiff a transfer from the CMU, is based upon his
offenses of convictions, then he will NEVER leave the CMU because that will
NEVER change unless the President grants him a pardon, or his offenses of
conviction are overturned. The chances of the President granting the
plaintiff a pardon is 0%, so his confinement in the CMU is indefinite.
Furthermore, plaintiff does NOT know what to do toearn his way out of the
CMU. In addition to this, Muslim inmates who do actually have a release
date, are routinely denied placement in a halfway house, because of their
"terrorism" cases, or their association with those who are known to be
international or domestic terrorists. Because the amount of time that
an inmate can be placed in a halfway house is governed by a federal
statute, an inmate's projected release date and home detention date
is actually decreased. Normally, the average person is given six months
of halfway house time. Inmates coming from the CMU are usually given no
halfway house time, or very little time, affecting their home detention
eligibility date, and their projected release dates.Therefore, the amount
of time an inmate must spend in prison is increased.

---

70 . Plaintiff also contends that the BOP defendants, Cruitt,Capaldo,Colt,
Simmons, Schiavone,Falls,have all monitored his legal ,and non-legal phone
calls, and have disclosed them to the FBI and other agencies, via the Fisher
Memo, violating the Privacy Act and the federal wiretapping statutes.
Defendants Dodrill,DAvis,Neumann, Rivas, Cardona,Smith,Taylor,vanyur,
ConleyLaird,malley, are and were aware of this "Fisher Memo", and that they
approved and condoned the use of this memo, by the CMu and CTU defendants,
despite knowing that it was, and is, in violation of federal law. The
plaintif f contends that the content of all of his legal, and non-legal calls,



and those of other Muslim inmates housed in ADX and the CMUs, were recorded,
and disclosed to the FBi and other agencies, via the "Fisher Memo", and
in violation of the federal wiretapping statute, the Privacy ACt, and the
First Amendment.

## IV. LEGAL CLAIMS

71. Plaintiff Nosair contends that the defendants violated the Privacy Act
when they failed to amend plaintiff's records, and relied on those erroneous
records to classify him as a "terrorist inmate", despite knowing that the
information that they relied on is false, and that the plaintiff has no
known links to terrorism, international or domestic. Plaintiff has been
kept in Control Units  like ADX, SMU, and both CMUs, despite the fact that
the information that the BOP is relying on to classify him is completely
false and fabricated. Plaintiff has NOT had an incident report in almost
20 years, See Exhibit 6, and has maintained clear conduct at every prison
he has been housed in since his incarceration. The H Unit Classification
Summary falsely states that the plaintiff assassinated Rabbi Kahane,
despite the fact that the plaintiff was acquitted of this in state court.
The reports that the BOP and CTU rely on indicate that the plaintiff was
a participant in the 1993 World trade Center Bombing, despite the fact that
the jury acquitted him of all of those counts, that the plaintiff used
threats of violence to force inmates to become Muslim, and that the
plaintiff has a substantial influence over inmates in the General Population.
All of the information that the CMu and CTU defendants are relying on is
absolutely false.

72. The Privacy Act 552a(e)(5)  requires  agencies to ensure that any records
used in "making any determination about any individual" are "maintained....

with such accuracy, relevancy, timeliness, and completeness as is reasonably necessary to ensure fairness to the individual in the determination." 5 USC 552a(e)(5). Section 552a(d) requires agencies to entertain requests for amendment of records that are not "accurate,relevant,timely, or complete." 552a(d)(2). If an agency rejects a request for amendment, the subject of the contested record can bring suit in federal court and obtain de novo consideration of whether amendment is warranted.Id.552a(g)(1)(A),(g)(2)(A). If the court so finds, it "may order the agency to amend the individual's record."552a(g)(2)(A). An individual may also sue if an agency "fails to comply with any other provision of the Privacy Act, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual," 5 USC 552a(g)(1)(D).

---

73. As the plaintiff stated, the BOP and the individual defendants have simply refused to amend plaintiff's records to remove the erroneous information from his CTU file. Plaintiff also contends that defendants Holder,AShcroft, Lappin,Samuels Jr., Thomas R.Kane, Smith, Dodrill,Cooksey,Conley,DeaVis (Davis), Nalley,Nelson,Laird,Taylor,Vanyur, D.Schiavone, Cruitt, Falls,Simmons, Capaldo,Coit,Hughston,Burrell,Duncan,Riley,Hood,Roal,Walton,Collins,Gomez, Sproul,Knox,Shepherd,Neumann,Cardona,Rivas,Johnson,Coleman,Lockett,Oliver, Julian,Parent,and Howard, and Mukasey, all vioalted his rights under the 14th Amendment Equal Protection Clause when they created a "terrorist inmate policy", and enforced that against Muslims of Arab and non-Arab descent, and that the creation of this policy was without a legitimate purpose. The plaintiff contends that the creation and implementation of thiss policy was based on his, and other Muslims, race,religion, and political beliefs. Plaintiff also contends that the BOP failed to engage in Notice and Comment Rulemaking, as is required by the Administrative Procedures Act,before creating this "terrorist inmate policy," violating the APA.5 USC 553 and 552(a). Plaintiff contends that the terrorist inmate policy amounts to a substantive



rule requiring notice and comment rulemaking. Plaintiff contends that the policy includes classification of certain inmates as terrorists, REGARDLESS of the crime for which they are convicted; imposing severe restrictions on these inmates communications; and segregating these inmates from the general population by confining them in conditions approximating administrative segregation or in the newly created CMUs. Plaintiff alleges that he has been classified as a "terrorist inmate" since 9/11 and housed in various Control Units, such as ADX, segregation, and both CMUs. This policy is NOT limited to the CMUs.

---

74. Plaintiff also contends that the previously mentioned defendants, Holder, Ashcroft,Lappin,Mukasey, Samuels Jr.,Kane, Vanyur,Taylor,Conley,Dodrill,Davis, Cooksey,Nalley,Nelson,Laird,Schiavone,Cruitt,Colt,Capaldo,Falls,Simmons, all created, implemented, and condoned the creation of this policy based on his race,religion, and political beliefs.

---

75. "to state an Equal Protection claim, a plaintiff must allege that an official purposefully discriminated against him because of his identification with a particular(presumably historically disadvantaged) group." Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216,1220(7th Cir.1994). AS the plaintiff stated, the defendants implemented this policy against the plaintiff, and other Muslims of Arab, and non-Arab descent, based on our race,rteligion, and political beliefs.

---

76. Plaintiff contends that the previously mentioned defendants conspired to deprive him of his Equal Protevction rights, by implementing this "terrorist inmate policy against him and other Muslims of Arab and non-Arab descent,based on our/their race,religion, and political beliefs. Plaintiff contends that defendants Vanyur,Conley,Cooksey,Taylor,Holder,Ashcroft,Lappin,Samuels Jr., Kane, Smith, Dodrill, Davis, Nalley, Nelson, Laird,Schiavone,Cruitt,Colt,Capaldo,



Simmons, and Falls, all conspired under 1985(3) to deprive him of his Equal Protection rights by creating, condoning, and implementing the "terrorist inmate policy", and turning a blind eye to it, knowing that it was,and still is, unconstitutional. 42 USC 1985(3) states the following:

"If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of anothe, for the purpose of depriving either directly or indirectly, any person, or class of persons of the Equal Protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such state or Territory the Equal Protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the elction of any lawfully qualified person as an elector for President or Vice-Presidentyor as a member of Congress of the United States; or to injure any citizen in person or in property on account of such support or advocacy; in any case of conspiracy under this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby ancther is injured in his property or persdon, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured may have an action for the recovery of damages, occasioned by such injury, or deprivation, against one or more cf the conspirators." 42 USC 1985(3).

---

77. 42 USC 1985(3) prohibits a conspiracy between private individuals and state individuals to deny a person equal protection under the law for racial or other class-based discriminatory animus. Fairley v. Andrews, 578 F.3d 518,526(7th Cir.2009). As the plaintiff stated, the defendant's actions were motivated by the plaintiff's race,religion, and political beliefs.



78. Plaintiff also contends that the intracorporate conspiracy doctrine does NOT apply to the 1985(3) claims, because the defendants actions were motivated by hatred of Islam, Muslims, and our political beliefs. And, the acts of the defendants occurred over a vast period of time and were numerous in number, not just a few isolated incidents. In Travis v. Gary Community Mental Helath Center, Inc., 921 F.2d 108,110(7th Cir.1991),it was stated that "managers of a corporation jointly pursuing its lawful business do NOT be come "conspirators" under 1985(3) when acts within the scope of their employment are said to be discriminatory or retaliatory." This case held that the "travis" rule would NOT apply where... employees are shown to have been motivated solely by personal bias.10 Fletcher 4877 at 339:Restatement of Torts 2nd of Agency 228(1958).

---

79. In Volk v. Colen, 845 F.2d 1422,1435(7th Cir.1988), the intracorporate doctrine was held NOT to apply where the plaintiff alleged "numerous acts undertaken by several corporate agents". Although Travis subsequently rejected the idea that the doctrine is merely avoided because the alleged conspiracy involves more than one discriminatory act, it too acknowledged that the nature of the discriminatory activity may require that the doctrine be disregarded.Id. Members of the Ku Klux Klan could NOT avoid liability by incorporating, for for they would still be trying to orga nize through persuasion or terror,multiple centers of social or economic influence. The Klan meddled in the business of others; that is what it made it dangerous.921 F.2d at 110. Plaintiff therefore ask that his claims be alloed to go forward.

80. Plaintiff also contends that the other defendants failed to prevent the conspiracy, even though they had the power to do so, making them liable under 42 USC 1986. Plaintiff contends that defendants Riley,Hood,Hughston,Burrell, Duncan,Roal,Walton,Collins,Gomez,Sproul,Knox,Shepherd,Neumann,Cardona,Johnson, Rivas,Coleman,Lockett,Oliver,Julian,Parent,Howard,and Mukasey all became aware of the conspiracy, and knew that what the other defendants were doing in their supervisory capacities was unconstitutional. These defendants failed

to intervene to prevent the defendants from conspiring, or ending the conspiracy, despite having the power to do so.

---

81. Plaintiff contends that all of the defendants actions in this complaint shocks the conscience, and thus, he raises a substantive Due Process claim against the defendants for creating the "terrorist inmate policy" and enforcing it against him and other Muslims based on race,religion, and political beliefs. The Due Process Clause of the 14th Amendment serves as "protection for an individual against arbitrary asction of government."County of Sacramento v. Lewsi, 523 U.S. 833,845; 118 S.Ct.1708; 140 L.Ed. 2d 1043(1998). In reviewing governmental action, "only the most egregious conduct can be said to be "arbitrary in the constitutional sense,""thus amounting to a constitutional violation. Id at 846(quoting Collins v. Harker Heights, 503 U.S. 115,129;112 S.Ct.1061; 117 L.Ed.2d 261(1992). Substantive Due Process cases involving alleged official misconduct are analyzed under the "shocks the conscience" standard. Palka v. Shelton, 623 F.3d 447,453-54(7th Cir.2010)("The Due Process Clause protects citizens from abuses of power by executive officials.. but official misconduct will rise to the level of a constitutional violation OBLY if it shocks the conscience.") Under this principle, courts have found government officilas actions to be"conscience shocking" when they "evinve a deliberate indifference to the rights of the individual "after having time for reasoned deliberation in their decisions." King ex rel.King v. East St.Louis School District.189, 446 F.3d 812,819(7th Cir.2007). Plaintiff contends that the actions of the defendats meet this standard.

---

82. Plaintiff also contends that the defendants Bureau of Prisons maintains an unauthorized system of records, which includes records of telephone calls, and electronic copies of emails and written correspondence, in violation of the Privacy ACt, 5 USC 552a(e)(7). The BOP "intends to retain that information on an indefinite and undefined basis," and the BOP has disclosed information about him to"persons or companies not authorized to receive such disclosures



by 5 USC 552a(b)(1-12) and in violation of 5 USC 552a(b), to the plaintiff's detriment." This file, known as the CTU file has vasts amounts of information about the plaintiff, to include social security records, tax records, family records, first amendment activities(such as praying in a mosque while the plaintiff was NOT incarcerated), and other records that the CTU and BOP is NOT authorized to retain. This information is contained in a separate sytem of records completely separate from any other BOP records system, and it has NOT been provided to the plaintiff, despite his numerous requests to be provided with the CTU file containing all information about the plaintiff. The defendants have also violated the Freedom of Information Act by failing to provide the plaintiff with the CTU file within 20 days. It has been several months since the plaintiff filed his FOIA request with the BOP's Central Office, and the BOP has failed to issue him an acknowledgement number for his FOIA request, or provide him with the status of his FOIA request, although numerous requests for a status update have been filed.

---

83. The Privacy Act protects the disclosure of certain information by providing that:

no agncy shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency except pursuant to a written request by, or with the prior consent of, the individual to whom the record pertains...with certain exceptions. 5 USC 552a. If an agency acting intentionally or willfully, violates this provision" "in such a way as to have an adverse effect on an individual", the individual may file a civil action for damages." 5 USC 552a(g)(1)(D). Both "actual damages with attorney's fees," 5 USC 552a(g)(4).

---

84. "the key elements of a cause of action under the Privacy Act for damages

(32)

for disclosure are:(1) agency disclosure(by any means of communication); (2)
to an individual or another agency:(3) of a 'record' contained in a system
of records; (4) which is unauthorized by the individual; (5) which is NOT
within an exception; (6) an adverse effect on the individual,which contains
two components and (iI) a causal nexus between the disclosure and the adverse
effect;(7) and the agency action being in a manner which was 'intentional'
or "willful".Carlson v. General Services Administration, NO 04C7937,2006 US
Dist.LEXIS 85672,2206 WL3409150, at *3(N.D.Illinois, Nov.21,2006).

---

85. AS plaintiff stated earlier, the defendants have maintained an unlawful
system of records on the plaintiff and other Muslims, and have disclosed this
information to the Federal Bureau of Investigation, without the prior consnet
of the plaintiff. The FBI has records about the plaintiff's First Amendment
activitiesiinstidesand outside of prison, to include plaintiff's travels to
a mosque,plaintiff's First Amendment activities in prison(complaints against
staff, lawsuits,grievances,etc.), plaintiff's tax records, travel records,etc.
This information, upon information and belief, has NOT been used for a valid
law enforcement purpose. The BOP Intelligence Analysts, some of whom are FBI
contractors, routinely disseminate this information to credit reporting
agencies, they call potential contacts on the plaintiff's list whenever the
plaintiff adds the contact information of a pen-pal or other private citizen,
and discourage those individuals from communicating with the plaintiff by
telling them that the plaintiff is a "terrorist", thereby infringing on the
plaintiff's right to association, and damaging his credit score and reputation.
In addition, the BOP refuses to release the plaintiff his entire CTU file,
in violation of BOTH FOIA and the Privacy Act. Plaintiff has suffered an adverse
effect because of the BOP's actions. In addition to this, the BOP's actions
also had an adverse effect on the plaintiff, because the disclosure of his
information to the FBI also affects the BOP's decision to classify the plaintiff
as a "terrorist" inmate, and as a result, the plaintiff has been housed in Control



Units his entire time, since 2002, when the BOP unlawfully begin to give the plaintiff's information to the FBI and other agencies, and then created the CTU, which has all of the plaintiff's information on it, given to them by the BOP. The plaintiff has maintained enough "points" to qualify for a camp or a low sercurity facility within the BOP, yet he ahs been housed in a maximum custody status ever since the BOP classified him as a terrorist inmate. See Exhibits 6 and 7. This classification comes as a result of NOT ONLY the "terrorist inmate policy", but also the BOP's unlawful disclosure of plaintiff's communications, both privileged and non-privileged, to the FBI, without his consent. See also Exhibit 8 Chronological Disciplinary Records and EXHIBIT 9

86. Plaintiff also contends that defendants Holder,Ashcroft,Lappin,Samuels Jr., Kane,Smith,Dodrill,Cooksey,Conley,Davis,Nalley,Nelson,laird,Taylor,Vanyur, Schiavone,Cruitt,Falls,Simmons,Capaldo,Colt,and Mukasey, all violated the federal wiretapping statute, when they unlawfully disclosed the plaintiff's emails, phone calls, to the FBI and other agencies, without the prior consent of the plaintiff. 18 USC 2510,et seq. The interception and disclosure of the plaintiff's emails and phone calls, both monitored, and un—monitored phone calls, to the FBI,Homeland Security, and the CIA, violates the federal wiretapping statute. Plaintiff contends that these defendants approved,authorized, and consented to the disclosure of the plaintiff's emails and phone calls to the FBI and other agencies, and that the interception and disclosure of these phone calls were not "in the ordinary course of the BOP's and/or the FBI's duties", for the same reasons outlined in his privacy act claims.

87. Under 18 USC 2520, an individual is allowed to recover damages from individuals who unlawfully intercept, and/or disclose wire,oral, or electronic information to other individuals, without the consent of the individual, and when it is NOT done in the :ordinary course of an officer's duties." 18 USC 2510(5)(a)(ii).



88. 18 USC 2520-Recovery of Civil Damages Authorized- states the following:

(a) In General- Except as provided in Section 2511(2)(a)(ii) any person whose wire,oral, or electronic communication is intercepted,disclosed,or intentionally used in violation of this chapter, amy in a civil action recover from the person or entity, other than the United States, which engaged in that violation, such relief as may be appropriate;

(b)Relief-In an action under this section, appropriate relief includes(1) such preliminary and other equitable or declaratory relief as may be appropriate;

(2) damages under subsection (c) and punitive damages in appropriate cases, and (3) a reasonable attorney's fees and other litigation costs reasonably incurred.

---

89. Plaintiff contends that the contents of all of his phone calls and his emails have been given to the CTU,FBI,CIA, Homeland Security, and other agencies and that the dissemination and disclosure of his phone calls to these agencies was NOT in the "ordinary course of any officer's duties."

---

90. Plaintiff contends that defendants Mukasey,Cooksey,Holder,Ashcroft,Lappin. Samuels Jr., Kane, Smith,Vanyur,Taylor,Conley,Davis,Nalley,Nelson,Laird, Schiavone,Cruitt,Falls,Simmons,Colt,Capaldo, all in their supervisory capacity, violated the plaintiff's First Amerndment right to familial association and general association when they imposed a complete ban on contact visits with him and his family, and other individuals he desires to have visits with. Plaintiff contends that the policy was ONLY implemented against those inmates who are Muslim, and those inmates who the BOP labeled as "terrorist inmates", after 9/11, whether or NOT the BOP has information to prove that the inmate is part of, or was associated with, a terrorist organization. Plaintiff contends that the BOP initially enacted these policies on Muslim inmates



such as the plaintiff, without stating WHY the complete ban on visits was, and still is, necessary to protect the public, the orderly operations of the BCP,m and/or its staff and other inmates, or national security. The plaintiff contends that every Muslim in BOTH CMUs, and ADX-Florence, Colorado, has been completely PROHIBITED from having contact visits with family, friends, members of the News Media, and other individuals. The plaintiff contends that this represents a ban on contact visits for 100% of the entire Muslim population at ADX, and both CMUs. Plaintiff contends that these regulations, and policies, were implemented in bad faith, and that the BOP did NOT have a legitimate reason for imposing a ban on contacts visits for 100% of the entire Muslim population. Plaintiff also contends that the BOP changed the criteria after 2006, to impose bans on contact visits for Muslim inmates, by placing non-Muslim inmates accused of minor communications infractions, non-Muslims accused of tax fraud,wire fraud, etc., in the CMUs, and placing them on Contact visit bans, to cover the fact that 100% of the Muslim population was on a complete contact visit ban. Plaintiff contends that defendants Riley,Hood,Hughston,Burrell,Knox, Duncan,Roal,Walton,Collins,Gomez,Sproul,Shepherd,Neumann,Cardona,Johnson, Rivas,Coleman,Lockett,Oliver,Julian,Parent,and Howard all implemented,condoned, and approved the policy of the previously mentioned defendants, despite knowing that the regulation was created for a discriminatory purpose. Plaintiff therefore contends that the defendants violated his First Amendment rights and his right toEqual Protection by imposing a ban on contact visits, based on the plaintiff's race,religion, and/or political beliefs.

---

91. Plaintiff contends that he seeks relief against the Federal Bureau of Prisons,United States, and the individual defendants in the form of injunctive relief, under the Administrative Procedures Act. Specifically, the APA states as follows:



"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief, other than money damages, and stating a claim that an agency or an officer or employee thereof acted, or failed to act in an official capacity or under color of legal authority shall NOT be denied therein on the grounds that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgement or decree may be entered against the United States: Provided, that any mandatory or injunctive decree shall specify the Federal officer or officers(by name or by title), and their successors in office, personally responsible for the compliance." 5 USC 702.

---

92. Plaintiff also seeks damages against all of the individual defendants under Illinois state law for Intentional Infliction of Emotional Distress, because the defendants actions were completely arbitrary and without basis in law or fact.

---

VI.Requested Relief

---

93. The plaintiff asks the court to grant him the following relief to which he may be entitled:

(a) A declaration that the defendants actions violated the Constitution,laws, and treaties of the United States;

(b)Preliminary and permanent injunctive relief enjoining the defendants from implementing the terrorist inmate policy againstthe plaintifff and other Muslims  in the CMUs, SMU(in Lewisburg,Pennsylvania),ADX, and any other BOP facility;

(c) Compensatory damages on all of the plaintiff's constitutional claims

in the amount of $500,000.00, jointly and severally aginst all defendants;

(d) Damages as to plaintiff's 1985(3) and 1986 conspiracy claims in the amount of $500,000.00, jointly and severally against each defendant;

(e) Damages as to plaintiff's Privacy Act claims in the amount of $500,000.00, against the Federal Bureau of Prisons;

(f) Damages as to the plaintiff's federal wiretapping claims in the amount of $500,000.00, jointly and severall against each defendant responsible;

(g) Damages for Intentional Infliction of Emotional Distress under Illinois state law in the amount of $100,000, jointly and severally against each defendant responsible;

(h) Punitive damages, in the amount of $2.5 million dollars, against each defendants responsible for the violations, as there actions were motivated by "evil intent", and "reckless and callous indifference" to the plaintiff's protected rights;

(i) Release of the entire Counterterrorism Unit("CTU") file to the plaintiff, in compliance with the Freedom of Information Act;

(j) A jury trial on all issues triable by a jury;

(k) Plaintiff's costs in this suit;

(l) All other relief this court deems, just,proper, and equitable.

/s/ El-Sayyid Nosair

Register Number: 35074-054

dated: 9/15/2013

94. Plaintiff Nosair contends that all of the defendants violated
his Procedural Due Process rights when they classified him as a
"terrorist" inmate, without affording him notice, and an opportunity
to be heard, which resulted in his placement in ADX,CMU, and other
extremely harsh,cruel, and restrictive conditions. Plaintiff
contends that he was removed from General Population, and placed
in the SHU, under SAMS, and SAM-like conditions, classified as a
"terrorist" inmate with a history and/or nexus to international
terrorism, "Al-Gamma Al-Islamia", was NOT given a chance to contest
this classification(because he was NOT even AWARE of this classification),
and was NOT provided with any notice, or reviews of his classification
as a "terrorist" inmate with a history or nexus to international
terrorism. Plaintiff also reiterates that there is no evidence that
he was ever connected, or affiliated with, Al-Gamma Al-Islamia.
Plaintiff contends that all of the defendants in this complaint,
including the ones who approved of his transfer to ADX-Florence,
Colorado, and the CMUs,violated his Procedural Due PRocess rights
by failing to provide him with notice, and an opportunity to be
heard, and acquiescing, approving, and condoning the deprivation
of his rights. "Procedural Due Process imposes constraints on
governmental decisions which deprive individuals of 'liberty' or
'property' interests within the meaning of the Due Process of  the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S.
319,332; 96 S.Ct.893; 47 L.Ed 2d 18(1976). "The fundamental
requirement of Due Process is the opportunity to be heard at a
meaningful time and in a meaningful manner." Mathews,424 U.S. at
333. Plaintiff thus contends that his Procedural Due Process
rights have been violated.