IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EL-SAYYID NOSAIR, # 35074-054, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-1017-MJR |
| ) | |
| FEDERAL BUREAU of PRISONS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

  Plaintiff, currently incarcerated at the United States Penitentiary at Marion ("Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also asserts claims under the following federal statutes: the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 702, 706; the Privacy Act, 5 U.S.C. § 552a(b), (c), & (g); the Freedom of Information Act, 5 U.S.C. § 552; and the federal wiretapping statute, 18 U.S.C. §§ 2510, 2520. In addition, he asks this Court to exercise its supplemental jurisdiction over his state tort claim for intentional infliction of emotional distress.

  Plaintiff was convicted in January 1996 in the Southern District of New York, of seditious conspiracy, two counts of attempted murder and one count of murder in furtherance of a racketeering enterprise, attempted murder of a federal officer, three counts of use of a firearm in relation to a crime of violence, and possession of a firearm with an obliterated serial number. *United States v. Nosair*, Case No. 93-cr-101 (S.D.N.Y.); *aff'd sub nom. United States v. Rahman*, 189 F.3d 88, 103-04 (2d Dist. 1999). Plaintiff is serving a life sentence for the murder

conviction, as well as terms of 240 months and 60 months on the other offenses.

In addition to Defendant Federal Bureau of Prisons ("BOP"), Plaintiff names a total of 46 individual Defendants in this action. He brings claims relating to his confinement in administrative detention following the September 11, 2001, terrorist attack that destroyed the World Trade Center (Doc. 1, p. 18), his subsequent transfer to the federal supermax prison on Florence, Colorado (ADX-Florence), where he remained from 2002 to 2009 (Doc. 1, pp. 19-21), and his confinement since that time in the BOP Communications Management Units ("CMU") at both Terre Haute, Indiana, and Marion (Doc. 1, pp. 21-25). His constitutional claims include violations of his rights to procedural and substantive due process and to equal protection (including a conspiracy claim), as well as First Amendment claims of interference with his attorney-client communications and communications with family and friends outside prison. The individual Defendants include Eric Holder (Attorney General of the United States), former Attorneys General of the United States,[1] numerous current[2] and past[3] Marion officials, current[4]

---

[1] According to Plaintiff, Michael B. Cooksey and Michael Mukasey are former Attorneys General. However, he also refers to Defendant Cooksey as a former Assistant Director of BOP's Correctional Programs Division (Doc. 1, p. 18)  In addition, Plaintiff makes allegations in the body of his complaint against former Attorney General Ashcroft (Doc. 1, pp. 17-19), but failed to include him among the list of Defendants that precedes his statement of claim. The Clerk shall be directed to add Defendant Ashcroft as a party.

[2] According to Plaintiff, the following Defendants are current Marion officials: J.S. Walton (Warden), Dan Sproul (Marion Associate Warden of Programs and former Unit Manager at ADX-Florence), C. Johnson (Associate Warden of Operations), Steven Cardona (CMU Unit Manager), M. Neumann (CMU Case Manager), G. Burgess (CMU Case Manager), Henry Rivas (CMU Intelligence Research Specialist), and M. Steinmetz (SIS Lieutenant).

[3] The following Defendants are former Marion officials: Wendy J. Roal (Warden), John Parent (Associate Warden of Programs), Steve Julian (Associate Warden of Operations), and Lawrence Howard (Captain).

[4] The following Defendants are current Bureau of Prisons officials: Leslie Smith (Chief Intelligence Analyst /Counterterrorism Unit), Charles Samuels (BOP Director), Brian K. Davis (Assistant Director of Correctional Programs Division), Paul M. Laird (BOP North Central Regional Director), D. Schiavone

and past[5] BOP officials, officials at ADX-Florence,[6] and officials at the CMU in Terre Haute, Indiana.[7]

Plaintiff asserts that none of his convictions were for a "terrorism offense," nor was he alleged to have been connected to any type of terrorist organization at the time he was convicted (Doc. 1, p. 15).[8] He is a Sunni Muslim of Arab descent. Prior to the events of September 11, 2001, he spent most of his incarceration in general population, where he "maintained clear conduct," never abused his communication privileges, and never was affiliated with any terrorist group (Doc. 1, pp. 15-17). After the September 11 terrorist attacks, Defendants Ashcroft, Taylor, Vanyur, Conley, and Lappin created a "terrorist inmate policy" without following the notice-and-comment requirements of the APA (Doc. 1, p. 18). As a result, on orders of Defendants Vanyur, Cooksey, Taylor, Lappin, and Ashcroft, Plaintiff was immediately placed in the Special Housing Unit, where he was restricted from contact with other inmates, and where his mail and telephone usage was extremely limited. This policy singled out

---

(BOP Senior Intelligence Analyst/Counterterrorism Unit), April Cruitt, William Falls, J. Simmons, T. Capaldo, and Stephen Colt (all BOP Intelligence Analysts/Counterterrorism Unit).

[5] The following Defendants are former BOP officials: D. Scott Dodrill (Assistant Director of Correctional Programs Division), Harley Lappin (BOP Director), Thomas R. Kane (Acting BOP Director), Joyce Conley (BOP Assistant Director of Correctional Programs), Michael K. Nalley (BOP North Central Regional Director), Amber Nelson (BOP North Central Acting Regional Director), Bill Taylor (BOP Chief of Intelligence Section), and John Vanyur (BOP Senior Deputy Assistant Director/Correctional Programs Division).

[6] The following Defendants are former or current officials at ADX-Florence: Ron Wiley and Robert A Hood (former Wardens), E.L. Hughston (former Captain); James E. Burrell (former Associate Warden of Programs), David Duncan (former Associate Warden of Operations), M. Collins (former Unit Manager), Gomez (Unit Manager), and Knox (Correctional Counselor).

[7] The following Defendants are officials at the CMU/Terre Haute, Indiana: Shepherd (Case Manager), Coleman (Intellligence Research Specialist), Charles Lockett (Complex Warden), and Oliver (Warden).

[8] Plaintiff was tried along with nine other defendants; some of the charges involved rendering assistance to persons who bombed the World Trade Center, as well as other acts characterized by the appellate court as "urban terrorism." *United States v. Rahman*, 189 F.3d 88, 103 (2d Dist. 1999).

Plaintiff and other inmates solely due to their religion and national origin, regardless of whether they had any "terrorist" conviction or affiliation. Plaintiff had no opportunity to contest this placement decision.

**ADX-Florence**

In September 2002, pursuant to a memorandum from Defendant Cooksey which contained false information that Plaintiff was connected to a terrorist organization, Plaintiff was sent to ADX-Florence (Doc. 1, pp. 18-19). He was not provided with any notice or hearing prior to this transfer. Defendants Cooksey, Vanyur, Lappin, and Ashcroft provided false, fabricated, and misleading information to ADX-Florence officials (Defendants Duncan, Hughston, Burrell, Hood, Knox, Collins, and Gomez) so that Plaintiff would meet the criteria for placement in the supermax prison (*See* Exhibit 4, Doc. 1-1, pp. 11-15). The disputed information includes claims that Plaintiff was involved in an Egyptian terrorist organization, that he assassinated Rabbi Kahane in 1990 (he was acquitted of that charge in state court), that he had been involved in several terrorist plots, and that he used threats of violence to recruit other inmates to Islam (Doc. 1, pp. 19-20). Defendants Hood, Riley,[9] Lappin, Kane, Smith, Conley, Cooksey, Davis, Nalley, and Nelson all approved and implemented the "terrorist inmate policy" and approved the use of this false information to keep Plaintiff housed in the most restrictive conditions. They took these actions because of his race, religion, and political beliefs (Doc. 1, p. 21). Further, Defendants Nalley, Nelson, Hood, Riley, Collins, Gomez, Sproul, Hughston, Burrell, Duncan, and Knox, based on Plaintiff's religion, race, and political beliefs, all denied Plaintiff's requests to transfer to a less restrictive facility than ADX-Florence.

---

[9] Plaintiff refers to a Defendant "Riley" in the body of his complaint (Doc. 1, p.27). The Court presumes this was an inadvertent error and that Plaintiff intended to refer to Defendant Wiley, who is a named Defendant.

**Terre Haute Communications Management Unit**

Plaintiff spent seven years at ADX-Florence without any rule infractions. He was moved into the ADX "Step Down" program, and then transferred in 2009 to the CMU at the federal prison in Terre Haute, Indiana (Doc. 1, p. 21).

Plaintiff claims that the CMU programs were created in 2006, without following the notice and comment requirements of the APA. The CMUs are run by the Counterterrorism Unit ("CTU") of the BOP, including Defendants Schiavone, Smith, Cruitt, Capaldo, Simmons, Falls, and Colt, who are responsible for identifying those inmates who should be confined to the CMU (Doc. 1, pp. 21-22). Inmates held in the CMU are subject to severe restrictions on their incoming and outgoing mail, which must be pre-approved, and telephone calls (limited to two per week subject to prior approval). The CTU maintains records on CMU inmates, which include some of Plaintiff's legal mail.

Plaintiff was given a written notice of his transfer to a CMU when he arrived at Terre Haute (Exhibit 5, Doc. 1-2, p. 1). It did not state how long Plaintiff could expect to remain there or what he could do to get out of the CMU placement. Defendants Lappin, Kane, Dodrill, Smith, Nalley, Nelson, Schiavone, Cruitt, Falls, Simmons, Capaldo, and Colt approved Plaintiff's transfer to the CMU based on information they knew to be false, and because of his race, religion, and political beliefs. Defendants Denham,[10] Lockett, and Oliver concurred in the placement decision (Doc. 1, p. 24). Defendants Shepherd and Coleman concurred in the placement decision and later denied Plaintiff's requests to be transferred out of the CMU. Defendants Samuels and Davis also denied his requests for transfer out of the CMU, based on

---

[10] Defendant Denham is not included among the enumerated Defendants at the beginning of the complaint, nor does Plaintiff identify this person or his/her position. The Court will not speculate as to who this individual may be or where s/he may be employed. If Plaintiff wishes to pursue a claim against Denham, he must submit an amended complaint with more specific information.

Plaintiff's race, religion, and political beliefs. Defendant Holder conspired with Defendants Dodrill, Samuels, and Davis to deny Plaintiff and other inmates transfers from the CMU based on their political beliefs, religion, and race.

**Marion CMU**

Plaintiff was moved to the CMU at Marion on or about January 30, 2012 (Doc. 1, p. 24). He again requested a transfer to general population, but was denied by Defendants Rivas, Roal, Neumann, Walton, Cardona, Dodrill, Davis, Laird, and Nelson. At Plaintiff's "review" meetings, he was told by Defendants Walton, Rivas, Neumann, Roal, Parent, Johnson, Howard, Sproul, and Julian that his stay in the CMU was "indefinite" (Doc. 1, pp. 24- 25). Plaintiff asserts that these Defendants' refusal to transfer him from the CMU is based on his race, religion, and political beliefs, as well as the false information in his CTU file.

Plaintiff also complains that Muslim inmates who have a projected release date are routinely denied placement in a halfway house, thus increasing the time they must spend in prison (Doc. 1, p. 25).

He asserts that Defendants Cruitt, Capaldo, Colt, Simmons, Schiavone, and Falls have monitored his legal and non-legal phone calls and have disclosed those calls to the FBI and other agencies, in violation of the Privacy Act and federal wiretapping statutes. These actions were approved by Defendants Dodrill, Davis, Neumann, Rivas, Cardona, Smith, Taylor, Vanyur, Conley, Laird, and Nalley, despite their knowledge that the monitoring and disclosure was in violation of federal law and his First Amendment rights (Doc. 1, pp. 25-26). The Defendants have refused to correct the inaccuracies in his CTU file records, despite his requests.

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages (Doc. 1, pp. 37-38).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, which the Court must do at this preliminary stage of the litigation, the Court finds that Plaintiff has articulated the following constitutional claims, which shall receive further review:

**Count 1:** Equal protection claim against all the individual Defendants except Defendants Burgess and Steinmetz (but not against Defendant Bureau of Prisons), for confining Plaintiff in restrictive conditions in ADX-Florence and the CMUs based on his race and religion;[11]

**Count 2:** Substantive and Procedural due process claims against all the individual Defendants except Defendants Burgess and Steinmetz (but not against Defendant BOP), for placing and retaining Plaintiff in restrictive conditions in ADX-Florence and the CMUs pursuant to the "terrorist inmate policy," and denying his requests for transfer, without affording him any process to contest such placement or retention;

**Count 3:** First Amendment claims for interference with Plaintiff's attorney-client communications, against Defendants Smith, Dodrill, Conley, Davis, Nalley, Laird, Taylor, Vanyur, Schiavone, Cruitt, Falls, Simmons, Capaldo, Colt, Neumann, Cardona, and Rivas.

Plaintiff is also entitled to further review of the following statutory claims:

**Count 4:** Violation of the Privacy Act, for retention and redisclosure of Plaintiff's records, and failure to correct his information, against Defendants Bureau of Prisons, Smith, Dodrill, Conley, Davis, Nalley, Laird, Taylor, Vanyur, Schiavone, Cruitt, Falls, Simmons, Capaldo, Colt, Neumann, Cardona, and Rivas;

**Count 5:** Violation of the Administrative Procedure Act for the adoption of the "terrorist inmate policy," against Defendants Bureau of Prisons, Lappin, Conley, Taylor, Vanyur, and Ashcroft;

**Count 6:** Violation of the Administrative Procedure Act for the creation of the Communications Management Units, against Defendant Bureau of Prisons;

---

[11] Plaintiff adds his "political beliefs" as one of the impermissible reasons for his placement in ADX-Florence and then in the CMU. However, the complaint fails to articulate what those particular beliefs consist of; therefore, Plaintiff fails to state an equal protection claim on this ground. Further, *Bivens* claims can only be maintained against individual defendants, not against an agency such as the BOP.

**Count 7:** Violation of the federal Freedom of Information Act, for failing to respond to Plaintiff's requests for information, against Defendant Bureau of Prisons;

**Count 8:** Violation of the federal wiretapping statute, for monitoring Plaintiff's conversations with attorneys and other persons, against Defendants Smith, Dodrill, Cooksey, Holder, Lappin, Kane, Samuels, Conley, Davis, Nalley, Nelson, Laird, Taylor, Vanyur, Schiavone, Cruitt, Falls, Simmons, Capaldo, Colt, Mukasey, Neumann, Cardona, Rivas, and Ashcroft.

However, Plaintiff has failed to state viable claims for conspiracy **(Count 9)**, intentional infliction of emotional distress **(Count 10)**, or for discriminatory denial of halfway house placement to Muslim inmates **(Count 11)**. Further, his First Amendment claim **(Count 12)** for interference with his familial and general associations overlaps and merges with his equal protection claims in **Count 1**. Therefore, these claims shall be dismissed.

### Dismissal of Count 9 - Conspiracy

Plaintiff alleges that the individual Defendants conspired to deprive him of his due process rights, as well as to place and retain him and other Muslims in the CMU in violation of their rights to equal protection under the law. Under the intracorporate conspiracy doctrine, a § 1985 conspiracy claim "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). Plaintiff has alleged that the defendants are all officials (or former officials) of the same entity, the Federal Bureau of Prisons, and that they were all working in the BOP's interest. The BOP is an agency of the United States Department of Justice, headed by Defendant Holder, and by the former attorney general Defendants. Therefore, the defendants cannot be sued for conspiracy under § 1985. *See id. See also Wright v. Ill. Dep't of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).

The Court declines Plaintiff's invitation to disregard the intracorporate conspiracy doctrine, citing *Travis v. Gary Comm. Mental Health Ctr.*, 921 F.2d 108, 110 (7th Cir. 1991) and

*Volk v. Coler*, 845 F.2d 1422, 1435 (7th Cir. 1988). *Travis* supports the Court's conclusion that the intracorporate conspiracy doctrine applies to defeat Plaintiff's claim. *Volk* does not dictate a different result, and in fact points out that Plaintiff would not be entitled to any additional damages if he were to prevail on a conspiracy claim in addition to the underlying due process or equal protection claims.

Further, "the function of a conspiracy claim under 42 U.S.C. § 1985(3) is to 'permit recovery from a private actor who has conspired with state actors.'" *Turley v. Rednour*, __F.3d __ , 2013 WL 3336713, *2 n.2 (7th Cir. July 3, 2013) (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)). Nowhere does Plaintiff's complaint allege the involvement of any private individual in the claimed constitutional violations. For these reasons, Count 9 shall be dismissed with prejudice.

**<u>Dismissal of Count 10 – Intentional Infliction of Emotional Distress</u>**

According to the Illinois Supreme Court, the tort of intentional infliction of emotional distress includes the following elements:

> (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress[;] and (3) the conduct must in fact cause severe emotional distress.

*Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988)).

While Plaintiff alleges that the Defendants' actions of denying him due process and equal protection "shock the conscience" (Doc. 1, p. 31), he does not claim that they took these actions with the requisite intent to inflict severe emotional distress. He merely claims that Defendants' actions were "completely arbitrary and without basis in law or fact" (Doc. 1, p. 37).

Further, he never claims that he in fact suffered any emotional distress as a result of the Defendants' conduct. Accordingly, Count 10 shall be dismissed without prejudice.

**Dismissal of Count 11 – Halfway House Placement**

Plaintiff makes general claims that Muslim inmates who have been confined in the CMU are either denied community halfway house placement when they near the end of their sentences, or are subjected to onerous conditions while in community placement. However, he does not allege that he personally has been denied community placement, and, because he is serving a life sentence, there is no indication that he might be eligible for such placement at any time in the foreseeable future. He therefore fails to state a claim. *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (plaintiff lacks standing in civil rights action where he alleges that inmates generally are treated in contravention to the constitution, but not that plaintiff himself was treated in violation of the constitution). Count 11 shall be dismissed without prejudice.

**Dismissal of Count 12 – First Amendment Claims/Rights to Association**

Plaintiff brings this claim seeking damages for the Defendants' imposition of a complete ban on contact visits and other restrictions on communications with family, friends, and associates outside the prison. However, he states that these restrictions are a direct result of Defendants' discriminatory treatment based on his race and religion. The First Amendment claims are thus redundant and duplicative of the equal protection claims. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder,* 150 Fed. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth

Amendment claims as duplicative of retaliation and freedom of religion claims).  Accordingly, the First Amendment claims in Count 12 shall be dismissed without prejudice.

**Dismissal of Defendants Burgess and Steinmetz**

Plaintiff lists these individuals among the Defendants, stating they are both currently employed at Marion.  However, he makes no mention of them or any allegedly unconstitutional actions taken by them elsewhere in the complaint.  Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).  Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.  Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  Accordingly, Defendants Burgess and Steinmetz will be dismissed from this action without prejudice.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Williams for further consideration.

The motion for order requiring the BOP to provide the Court with current addresses of some Defendants (Doc. 4) is **GRANTED** as ordered below.

The motion for the Court to take judicial notice (Doc. 5) is **GRANTED.**  The Court is aware of the decision in *Royer v. Federal Bureau of Prisons*, 934 F. Supp. 2d 92 (D.D.C. 2013) allowing the prisoner to go forward with his APA claims.

The motion requesting personal service on the Defendants (Doc. 6) is

**GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below on those Defendants who remain in the action. No service shall be made on the dismissed Defendants.

**Disposition**

The Clerk is **DIRECTED** to add **ASHCROFT** (former Attorney General of the United States) as a party Defendant.

**COUNT 9** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNTS 10, 11 and 12** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **BURGESS** and **STEINMETZ** are **DISMISSED** from this action without prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **FEDERAL BUREAU of PRISONS, SMITH, DODRILL, HOLDER, LAPPIN, KANE, SAMUELS, CONLEY, DAVIS, NALLEY, NELSON, LAIRD, WILEY, HOOD, HUGHSTON, BURRELL, DUNCAN, COLLINS, GOMEZ, KNOX, ROAL, WALTON, SPROUL, SHEPHERD, NEUMANN, CARDONA, JOHNSON, RIVAS, COLEMAN, LOCKETT, OLIVER, JULIAN, PARENT,** and **HOWARD**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve the above Defendants pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[12] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

---

[12] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Plaintiff states that the following Defendants, who work with the BOP's Counterterrorism Unit in Martinsburg, West Virginia, have an address that is "known only by the BOP": **SCHIAVONE, CRUITT, FALLS, SIMMONS, CAPALDO,** and **COLT** (Doc. 1, pp. 9-10). Therefore, Plaintiff did not provide an address for these individuals. Similarly, Plaintiff did not provide an address or former prison location for retired BOP employee Defendants **TAYLOR** and **VANYUR**, whose addresses are also "known only by the BOP" (Doc. 1, p. 9). With respect to these Defendants, the **BUREAU OF PRISONS** or its representative, **within 45 days of the date of this order (on or before December 16, 2013), SHALL** furnish the Clerk with each Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk. Upon receipt of the address information, the Clerk shall issue summons and USM-285 for service of process, and the United States Marshal shall serve these Defendants as outlined above.

In addition, Plaintiff did not provide an address for Defendants **COOKSEY, MUKASEY,** or **ASHCROFT**, whom he alleges are former Attorneys General of the United States, and whose addresses are unknown to the Plaintiff (Doc. 1, pp. 8, 10). With respect to

these Defendants, Defendant Attorney General **HOLDER** or his representative, **within 45 days of the date of this order (on or before December 16, 2013), SHALL** furnish the Clerk with each Defendant's current work addresses, or, if not known, the Defendant's last-known address. This information shall be used only for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk. Upon receipt of the address information, the Clerk shall issue summons and USM-285 for service of process, and the United States Marshal shall serve these Defendants as outlined above.

Similarly, for any other Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States

Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 30, 2013**

s/ MICHAEL J. REAGAN
United States District Judge
